BONSACK MACH. CO. v. ELLIOTT.

SAME et al. v. NATIONAL CIGARETTE & TOBACCO CO. et al.

(Circuit Court of Appeals, Second Circuit. April 6, 1896.)

PATENTS—LIMITATION OF CLAIMS—CIGARETTE MACHINES.
 The Emery "belt patent," No. 216,164, for a cigarette machine, is limited, as to claims 10 and 12, to an endless belt, curved transversely into tubular form, to constitute a mold for compressing the tobacco into a filler, and they do not cover a flat belt, which serves merely to support and carry the filler after it has been formed by a separate device. 16 C. C. A. 250, 69 Fed. 335, affirmed on rehearing.

Appeal from the Circuit Court of the United States for the Southern District of New York.

These were suits in equity by the Bonsack Machine Company against Henry C. Elliott, and by the Bonsack Machine Company and the American Tobacco Company against the National Cigarette & Tobacco Company and others, for infringement of four patents for cigarette machines. In the circuit court certain claims of each patent sued on were sustained, and found to be infringed, and a decree was entered for complainants accordingly. 63 Fed. 835. Defendants appealed to this court, which, on June 28, 1895, reversed the decree below. 16 C. C. A. 250, 69 Fed. 335. The cause is now for decision on a rehearing.

Robert H. Duncan and A. H. Burroughs, for complainants.
E. N. Dickerson and Edwin H. Brown, for defendants.

Before WALLACE and SHIPMAN, Circuit Judges, and TOWNSEND, District Judge.

SHIPMAN, Circuit Judge. The complainants in the above-entitled causes applied for a rehearing upon two questions: (1) The proper interpretation of claims 10 and 12 of the Emery patent, No. 216,164; (2) the question of infringement of said claims,—and the application was granted. The original opinion of the court states the facts in regard to the Hook, Abadie, and Emery belt patents (16 C. C. A. 250, 69 Fed. 335), but some repetition may be desirable. The Hook machine was the first attempt to manufacture a rolled and wrapped cigarette of indefinite length. It attempted to compress the tobacco into a filler, and to roll the wrapper about the filler simultaneously in the same trough or tube-forming die, and was a commercial failure on account of the resistance which the fibers of long-fibered tobacco made to being wrapped before they had been thoroughly compressed. The Emery belt machine improved upon the Hook patent by adopting "the principle of forming the filler before beginning the wrapping operation. The filler was continuously formed before it reached the wrapper, in an endless traveling belt, curved around the tobacco by the walls of a chamber through which the belt passes. This endless belt separates from the tobacco filler as it delivers it to the paper wrapper and disappears beneath the table; but, after the paper strip has been wrapped around the filler, and the overlapping edge pasted down, the belt, reappearing above the table, comes into action again, and is caused to encircle the sealed cigarette rod with a close frictional contact, passing with it through a hollow cylinder or guide tube." In the determination of the question of infringement by any subsequent and competing machine, it became, of course, important to ascertain the scope of the Emery invention, and for this purpose to know its position in the history of the art. The complainants, who were anxious that the patent should occupy a large territory, desired that especial consideration should be given to its alleged primary character, and considered that the essential features of the Emery invention were that the filler should be formed in one set of devices and should be wrapped in another set, and that an endless belt should, as a carrier, connect the two sets, and that the particular kind of filler-

forming chamber and the particular kind and office of the belt, if it was a carrier or supporter, were unimportant. The court said, in its opinion, that this construction took no account of the Abadie machine, which had, in an imperfect form, the principle of the Emery invention, by which was meant that the filler was formed by one set of devices, and was subsequently wrapped by another set. No importance was placed upon the heavy thread of leather or rubber in the Abadie machine which passed over the center of drawing pulleys, and threaded the paper into the machine. This was not supposed to be a belt. Subsequent reflection has brought us to the conclusion, which was strengthened upon the rehearing, that too much stress was placed in the former opinion upon the Abadie machine, not because it did not have separate filler-forming and filler-wrapping devices, but because its filler-forming mechanism, and the manner by which the filler was conveyed to the wrapping mechanism, were so unlike the Emery construction as to make its place in the history of the development of cigarette mechanism between Hook and Elliott of no comparative importance. In the Abadie machine the tobacco was molded into a filler in a metallic molding tube, through which the tobacco was moved onward by a piston or pump plunger. A helicoidal mold inclosed the orifice of the molding tube, supported the paper in trough form, which received the filler as it was pushed forward by the piston. The filler, on leaving the end of the molding tube, entered directly upon the band of paper during its formation into a continuous tube, and there was no intervening belt or carrier between the two sets of devices. Abadie, by a piston or plunger, pushed his filler immediately upon the paper in the helicoidal mold which inclosed the orifice of the molding tube; Emery carried to the paper wrapper his formed filler in the curved belt which compressed it.

The question remains as to the proper construction of the Emery belt patent with the Abadie machine out of view. The Hook machine was a combined filler forming and wrapping device. Its successor was a separate filler-forming and filler-wrapping machine; and the complainants, without limiting themselves to the peculiarities of either set of devices, and speaking in general terms, regard the claims 10 and 12 as covering any machine which forms the tobacco into a filler in one set, and subsequently wraps such formed filler in another set, provided the filler is carried from the filler-forming devices to the wrapping devices by an endless belt. This construction is broader than the invention, and gives far wider scope to the belt than it deserves. The invention was the described and claimed means by which the filler was formed and delivered to the wrapping devices, and consisted as much in the means by which it was formed as the means by which it was delivered. The expansion of the invention so as to make any flat belt or ribbon which may serve as a support and as a carrier correspond to the curved belt, which is a part of the forming mechanism, cannot be permitted. As it was said in the prior opinion: "The Emery belt was not a mere carrier. It was continually a forming and encircling tube. An endless belt, to serve simply as a carrier, has a different char-

acter, and performs a different office, from the belt of the Emerys." The conclusion which we reached before is not changed, that "the endless belt of the tenth and twelfth claims is curved, so as to compress the tobacco and form the filler, and the filler-forming chamber is one in which the filler is molded by the curved belt. The two claims are to be limited to the endless belt, which is curved transversely into tubular form, to constitute a mold, which compresses or molds the tobacco into a filler, and to the filler-forming chamber, which operates to bend or curve the belt into the tubular form; not merely to enable it to receive or to carry, but to enable it to form, a filler by the power conveyed by it." 16 C. C. A. 250, 69 Fed. 335. The directions which were heretofore given in regard to the interlocutory decree of the circuit court in the case against Henry C. Elliott, and in regard to the order, pendente lite, of the circuit court in the case against the National Cigarette Machine Company, are not changed.